**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAITONA CARTER,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN A. FEINBERG, Deputy Secretary of Defense; and<br>PETE HEGSETH, Secretary of Defense,<br><br>Defendants. | Case No. Case: 1:26–cv–03318<br>Assigned To : Unassigned<br>Assign. Date : 9/22/2026<br>Description: TRO/Prelim. Inj. (D–DECK) |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
(Administrative Procedure Act; Mandamus;Preliminary Injunction)

Plaintiff Daitona Carter ("Plaintiff"), proceeding pro se and in forma pauperis, brings this action against Defendants Stephen A. Feinberg, Deputy Secretary of Defense, and Pete Hegseth, Secretary of Defense, each in their official capacities, seeking immediate declaratory, injunctive, and mandamus relief to halt the unlawful elimination of mandatory CAS cost segregation requirements. Absent immediate judicial intervention, the implementation of Defendants' directives will permanently eliminate the generation of contract-level cost-segregation data necessary to secure effective remedies in Plaintiff's pending federal appellate proceedings. In support thereof, Plaintiff alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court possesses subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (mandamus jurisdiction), and 5 U.S.C. § 702, which provides an explicit waiver of sovereign immunity for actions seeking



RECEIVED
SEPT 22 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

relief other than money damages challenging unlawful agency action under the Administrative Procedure Act ("APA").

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are officers of an agency of the United States acting in their official capacities, the Department of Defense is headquartered in The Pentagon, Arlington, Virginia, and a substantial part of the events and directives giving rise to the claims asserted herein occurred within the District of Columbia.

## II. THE PARTIES

3. Plaintiff Daitona Carter is a non-party inventor who was admitted as Movant-Appellant/Petitioner in the United States Court of Appeals for the Federal Circuit (Appeal No. 26-1721) as a proposed intervenor from the lower court. Plaintiff's Motion for Constructive Trust and Escrow Framework (Doc. 19) is pending and undisposed in that appeal. Separately, Plaintiff petitioned the Director of the United States Patent and Trademark Office, who, despite initial refusal, docketed Plaintiff's Notice of Related Case Information on the USPTO IPR docket as a non-party. The USPTO docketed the intake correspondence rather than a formal notice.

4. Defendant Stephen A. Feinberg is the Deputy Secretary of Defense. In his official capacity, Defendant Feinberg is the chief operating and acquisition executive responsible for issuing binding policy memoranda governing defense contract cost accounting and procurement standards across all military components.

5. Defendant Pete Hegseth is the Secretary of Defense and the cabinet-level head of the Department of Defense. In his official capacity, Defendant Hegseth is vested with ultimate

statutory authority over the administration of defense procurements, contract executions, and agency compliance with federal procurement statutes.

## III. STATEMENT OF FACTS

6. On August 18, 2026, Defendant Feinberg issued a binding Departmental memorandum commanding all military components to implement automated Application Programming Interfaces ("APIs") to extract cost data directly from defense contractors' Enterprise Resource Planning ("ERP") and financial systems for all active contracts valued at or above $10,000,000. (Exhibit A.)

7. On September 14, 2026, Defendant Feinberg issued a second memorandum, titled "Fostering One Strong Industrial Base," directing the Department to shift its default cost accounting framework from Cost Accounting Standards ("CAS") to Generally Accepted Accounting Principles ("GAAP") across all defense contracts. (Exhibit B.)

8. The September 14, 2026 memorandum institutes a mandatory 30-day deadline commanding all military components to discontinue "shadow CAS" reporting and verification practices. That deadline expires on or about **October 14, 2026**.

9. Congress has codified the creation, modification, and administration of Cost Accounting Standards under 41 U.S.C. §§ 1501–1502, vesting exclusive regulatory authority over these standards in the government-wide Cost Accounting Standards Board ("CAS Board"). The statutory CAS framework mandates contract-level cost segregation and audit trails capable of isolating proceeds attributable to specific technology components within larger systems.

10. Plaintiff's 2009 public disclosure, published at blogspot.com and bearing Plaintiff's full legal name and website daitonacarter.com, describes the signal processing architecture

(parallel compression, pre-delay attack, and musical release times) that constitutes the prior art underlying U.S. Patent Nos. 10,306,389; 10,651,866; 11,082,055; 11,871,174; and 12,216,339. The disclosure is incorporated in the CAFC appendix for Appeal No. 26-1721 and is docketed on the related PTAB IPR proceeding. (Exhibit E.) Plaintiff is the true inventor of the technology covered by those patents and has no patent of her own. Plaintiff's pending § 256 inventorship correction in Appeal No. 26-1721 seeks to correct the patent records to reflect Plaintiff as an omitted inventor.Plaintiff holds no patent of her own. Plaintiff's reduction to practice (2009 blogspot, 2016 prototypes, 2013-2017 source code, 2019 ARIA YouNoodle hosted Enterprenuial World Cup Registration) predates all five Solos patents.

11. On May 15, 2026, Plaintiff filed a Motion for Constructive Trust and Escrow Framework (Doc. 19) in the Federal Circuit (Appeal No. 26-1721) to sequester technology-derived revenue streams into court-supervised escrow. The filing was never properly entered on the CAFC docket. The clerk's electronic infrastructure omitted the mandatory docket number, verification header, and official entry date. The document's metadata confirms improper processing: the live browser tab exposes the original local filename ('INJ.pdf') rather than a standardized court filename, which generates only upon localized download. The companion omnibus filing (ECF 19) was subjected to editorial corruption, including the unauthorized insertion of an anomalous character ('52') into the plaintiff's corporate nomenclature, specifically designed to defeat automated federal judicial indexing. The lower court record was forensically compromised: Docket #91 (April 17, 2026) had its metadata and descriptions altered post-filing to label distinct files as 'duplicates' despite unique digital hashes, and Docket #92 was suppressed with '-1' placeholders replacing the

actual files. PACER confirms successful upload and NEF to all parties for both entries, but neither is visible on the public docket. On September 21, 2026, Plaintiff filed a motion (Doc. 47) requesting, among other relief: (a) the severance of Doc. 19 from the omnibus into a standalone, independent record; (b) an interim financial preservation order requiring maintenance of CAS cost-segregation records and staying any GAAP conversion for the specific contracts at issue (Doc. 47, Item 7); and (c) a show-cause order regarding the 129-day inaction on Doc. 19. Doc. 47, Section III, independently identifies the Feinberg memoranda (Aug 18 and Sept 14, 2026) as the source of the emergency. As of the date of this complaint, Doc. 19 has remained undisposed for 130 days. (Exhibit C.)

12. Plaintiff is preparing to file a separate civil action under the civil remedy provisions of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1595, arising from the same operative facts alleged herein. To secure a meaningful remedy under § 1595, Plaintiff must be able to produce segregated CAS accounting records to calculate the proceeds attributable to the technology. This action is not a TVPA claim. It is an APA/PI action to preserve the records necessary for that separate, anticipated proceeding.

13. The rapid implementation of the September 14, 2026 memorandum creates an immediate crisis: the mandatory conversion of contractor records from CAS segregation to GAAP consolidation is not a file format change. It is a **restructuring of the data model**. CAS requires contract-level cost pools, indirect rate allocations, and labor-hour tracing to specific contracts. GAAP does not. The conversion **dissolves the cost pools** into aggregate R&D and overhead lines that cannot be re-segregated. The information is not preserved in a different structure. It is destroyed by the act of conversion. No subsequent discovery order or post-judgment monetary award can reconstruct historical cost segregations from

GAAP aggregates. Once the "shadow CAS" infrastructure is dismantled on October 14, 2026, the cost-segregation audit trail is permanently eliminated.

14. The patented technology at issue in Federal Circuit Appeal No. 26-1721 is incorporated into the Department of Defense's Soldier Borne Mission Command ("SBMC") program, the successor to the Integrated Visual Augmentation System ("IVAS") program. The $21.88 billion IVAS production contract was transferred from Microsoft to Anduril Industries in February 2025. The SBMC program currently involves three prime prototype contracts: Anduril ($159 million, partnered with Meta Platforms Inc., Qualcomm Technologies, OSI, Gentex Corp., and **Oakley Inc. (a subsidiary of EssilorLuxottica S.A., the defendant in Solos v. Meta, 1:26-cv-10304 (D. Mass.))**); Rivet Industries ($195 million); and Elbit Systems of America ($120.5 million, partnered with Booz Allen Hamilton for AI) and the $500M Scale AI Pentagon contract and the Scale AI CDAO contract ($500M ceiling, expanded May 2026 from $100M, for AI data curation and decision-support services; Top Secret/SCI clearance). (May 5, 2026). (Exhibit G.)

15. The SBMC program is transitioning from Phase One to Phase Two. Anduril publicly announced on August 17, 2026 that it is "moving from phase one to phase two," with 170 Phase Two prototypes to be delivered and testing slated to begin in late January or early February 2027. If the CAS-to-GAAP conversion is complete before Phase Two cost data is generated, that data will be collected under GAAP and will **never** have CAS cost segregation. This is not a temporary loss. It is a permanent structural gap. (Exhibit D.)

16. The technology is also present in the pipeline through DoD contracts held by Meta Platforms Inc. (waveguide optics and AI for SBMC) and Kopin Corporation (MicroLED displays, IBAS, with SBMC contributions projected at $350–500 million over the

program's life). (Exhibit H.) The CAS cost-segregation records for these contracts are the only records capable of isolating proceeds attributable to the specific patented technology.

17. Plaintiff is not a party to any of the contracts identified in paragraphs 14–16. Plaintiff's interest in the CAS cost-segregation records is as a litigant whose **pending** Motion for Constructive Trust and Escrow (Doc. 19, CAFC No. 26-1721) and **pending** § 256 inventorship correction require them as the basis for identifying and tracing the subject property of the trust and for calculating statutory compensation in any subsequent action in the United States Court of Federal Claims under 28 U.S.C. § 1498. The constructive trust alone establishes Plaintiff's concrete, imminent, and redressable injury: without the CAS records, the trust is permanently unenforceable for SBMC Phase 2 and any subsequent production award.

## IV. CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**

**Administrative Procedure Act — Action in Excess of Statutory Authority**

**(5 U.S.C. § 706(2)(C))**

18. Plaintiff incorporates by reference paragraphs 1 through 17 as if fully set forth herein.

19. Pursuant to 41 U.S.C. § 1502(a)(1), Congress exclusively delegated the authority to prescribe, amend, and rescind Cost Accounting Standards to the government-wide Cost Accounting Standards Board. No individual executive department possesses the statutory authority to alter or phase out these standards unilaterally.

20. Defendants' September 14, 2026 memorandum contains an explicit acknowledgment of this statutory limitation, stating: "By law, the Pentagon will still need to apply CAS to sole

source development programs until it can work within the governmentwide CAS Board to change the standards of CAS to GAAP." (Exhibit B, p. 2.) This is not a statement of future intent. It is an admission that the current legal obligation to apply CAS remains in force for programs within the statutory scope, including sole-source development programs.

21. Despite this acknowledgment, the memorandum's mandatory 30-day directive to dismantle "shadow CAS" practices operates to eliminate the **informal mechanisms** by which contracting officers and auditors have historically obtained contract-level cost segregation data for programs that fall within the CAS scope but are not formally designated as "sole-source development" in the contract file. The result is that programs **functionally within** the CAS scope (competitive in form but sole-source in substance, due to the specific technology at issue) lose their cost segregation protection without the CAS Board ever acting.

22. The directive constitutes "final agency action" under 5 U.S.C. § 704 because it marks the consummation of the agency's decision-making process, imposes immediate and binding compliance obligations upon the defense-industrial base, and is the occasion for future legal obligations (the 30/60/90-day implementation clocks).

23. Because the memorandum attempts to unilaterally alter the practical application of a statutory accounting framework outside the mechanisms of the CAS Board, it must be set aside as an action taken "in excess of statutory jurisdiction, authority, or limitations" under 5 U.S.C. § 706(2)(C).

## SECOND CLAIM FOR RELIEF

### Administrative Procedure Act — Arbitrary and Capricious Action

### (5 U.S.C. § 706(2)(A))

24. Plaintiff incorporates by reference paragraphs 1 through 23 as if fully set forth herein.

25. An agency action is arbitrary and capricious if it fails to consider significant, foreseeable aspects of the problem. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

26. In issuing the August 18 and September 14, 2026 memoranda, Defendants failed to consider:

(a) The foreseeable impact that the elimination of CAS cost-segregation data would have on **active, pending federal appellate proceedings** in which contract-level cost records are necessary to enforce an equitable remedy (specifically, the Motion for Constructive Trust and Escrow, Doc. 19, CAFC No. 26-1721, filed May 15, 2026, undisposed for 130 days);

(b) The **irreversible** nature of the data conversion. The conversion from CAS to GAAP is not a file format change. It is a restructuring of the data model. CAS requires contract-level cost pools, indirect rate allocations, and labor-hour tracing to specific contracts. GAAP does not. The conversion **dissolves the cost pools** into aggregate R&D and overhead lines that cannot be re-segregated. The information is not preserved in a different structure. It is destroyed by the act of conversion. No subsequent discovery order or post-judgment award can reconstruct historical cost segregations from GAAP aggregates;

(c) The **30-day implementation window** (expiring October 14, 2026) which, if executed, will be complete before the SBMC Phase 2 prototypes (170 units, testing January–February 2027) generate their first cost data. The Phase 2 data will be collected under GAAP from day one. It will **never** have CAS cost segregation. This is not a temporary loss. It is a permanent structural gap.

27. Defendants provided no reasoned justification for the 30-day deadline. No regulatory impact analysis, notice-and-comment period, or consultation with the CAS Board preceded the directive. The *State Farm* requirement to "examine the relevant data and articulate a satisfactory explanation" was not met.

**THIRD CLAIM FOR RELIEF**

**Writ of Mandamus**

**(28 U.S.C. § 1361)**

28. Plaintiff incorporates by reference paragraphs 1 through 27 as if fully set forth herein.

29. Defendants possess a clear, nondiscretionary, and ministerial statutory duty under 41 U.S.C. § 1502 and 48 C.F.R. Part 9905 to maintain CAS cost segregation for all contracts within the statutory scope of full CAS coverage. The September 14 memorandum **concedes this duty** in its own text (paragraph 20, supra): "By law, the Pentagon will still need to apply CAS to sole source development programs until it can work within the governmentwide CAS Board to change the standards of CAS to GAAP." The duty is not discretionary. It is statutory. It applies until the CAS Board acts. The CAS Board has not acted.

30. Plaintiff possesses a clear right to an effective judicial remedy. The Motion for Constructive Trust and Escrow (Doc. 19, CAFC No. 26-1721) is pending and undisposed. Enforcement of that trust requires identification and tracing of the subject property through contract-level cost segregation. Without the CAS records, the trust is unenforceable. Plaintiff's right to the trust is not theoretical. It is a pending equitable proceeding in a federal court of appeals.

31. Plaintiff has no other adequate remedy at law. The 30-day conversion clock expires **October 14, 2026**. After that date, the shadow CAS infrastructure is dismantled, the cost pools are dissolved, and the segregation data is structurally eliminated. No discovery motion, no subpoena, no FOIA request can regenerate data that was never collected in the required format. **The window is 22 days.**

32. Plaintiff is entitled to an order compelling Defendants to **maintain CAS cost segregation** for the following specific contracts and subcontracts (hereinafter, the "Covered Contracts"): (a) the Anduril SBMC prototype contract ($159M); (b) the Rivet SBMC prototype contract ($195M); (c) the Elbit SBMC prototype contract ($120.5M); (d) the Kopin IBAS contract ($15.4M); (e) the Lockheed Martin NGSRI Phase 2 contract; (f) the $2.4M international thermal weapon sight order; and (g) the $3.6M European military helmet display order (h) the Scale AI CDAO contract ($500M ceiling, May 2026).— in their current segregated form, pending resolution of Doc. 19 and the § 256 inventorship correction in CAFC No. 26-1721.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue a **Temporary Restraining Order** enjoining Defendants, their agents, officers, and components from executing the September 14, 2026 memorandum as to the CAS cost-segregation records relevant and material to Plaintiff's pending Motion for Constructive Trust and Escrow (Doc. 19, CAFC No. 26-1721) and the § 256 inventorship correction and the severed standalone Constructive Trust and Escrow (Doc. 19, as severed by Doc. 47, Item 5, and prohibiting the modification, consolidation, conversion, deletion, or rendering inaccessible of any such records for the Covered Contracts identified in paragraph 32;

2. Issue a **Preliminary Injunction** preserving all relevant CAS cost-segregation records in their current segregated form, and requiring Defendants to maintain CAS cost segregation for new cost data generated for the Covered Contracts and for SBMC Phase 2 and any subsequent production award, pending the disposition of Doc. 19 in CAFC No. 26-1721;

3. Enter a **Declaratory Judgment** declaring that the September 14, 2026 memorandum titled "Fostering One Strong Industrial Base" is an action in excess of statutory authority under 41 U.S.C. § 1502 to the extent it eliminates CAS cost segregation for programs within the statutory scope without action by the CAS Board;

4. Issue a **Writ of Mandamus** compelling Defendants to maintain CAS cost-segregation records in their current segregated form for the Covered Contracts, pending resolution of the pending CAFC proceedings;

5. Award Plaintiff taxable costs pursuant to 28 U.S.C. § 1920; and, to the extent Plaintiff subsequently retains legal representation, award reasonable attorneys' fees, expert witness costs, and litigation expenses pursuant to the Equal Access to Justice Act, 5 U.S.C. § 7430 and 28 U.S.C. § 2412; and

6. Grant such other and further relief as this Court deems just and proper.

## VERIFICATION

I, Daitona Carter, declare under penalty of perjury that I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Executed on September 22, 2026.

_______________________________

Daitona Carter, Plaintiff, Pro Se
General Delivery, Main Post Office
2 Massachusetts Ave NE
Washington, DC 20002
No Phone. All communications by email only.
legal@daitonacarter.com