**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAITONA CARTER,

Plaintiff,

v.

STEPHEN A. FEINBERG, Deputy Secretary of Defense; and
PETE HEGSETH, Secretary of Defense,

Defendants.

Case No. Case: 1:26–cv–03318
Assigned To : Unassigned
Assign. Date : 9/22/2026
Description: TRO/Prelim. Inj. (D–DECK)

**PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1. Plaintiff Daitona Carter, proceeding pro se in forma pauperis, moves under Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1 for a temporary restraining order and preliminary injunction that preserves, in their current form, the Cost Accounting Standards ("CAS") cost-segregation records relevant and material to Plaintiff's pending Motion for Constructive Trust and Escrow (Doc. 19, CAFC No. 26-1721) and pending § 256 inventorship correction (the "Covered Records") while this action is decided.

2. This motion is supported by Plaintiff's Verified Complaint, which is verified under 28 U.S.C. § 1746 and may be treated as an affidavit under Rule 65(b)(1)(A); by the memorandum below; by the Certificate Regarding Notice required by LCvR 65.1(a); and by a proposed order under LCvR 7(c).

3. Because no counsel has yet appeared for Defendants, Plaintiff could not confer with opposing counsel under LCvR 7(m). Plaintiff's efforts to give notice are described in the attached Certificate Regarding Notice.

RECEIVED
SEPT 22 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

4. The need is urgent. The September 14, 2026 memorandum establishes a 30-day compliance window expiring on or about October 14, 2026 — **22 days from the date of this motion.** Converting segregated cost records to consolidated commercial records is irreversible. The SBMC program is transitioning from Phase One to Phase Two, and new cost data generated during Phase Two (testing January–February 2027) will be collected under GAAP and will never have CAS cost segregation.

5. This motion does not enjoin the September 14, 2026 memorandum as to any other contract, program, or procurement. It is limited to the seven specific Covered Contracts identified in paragraph 32 of the Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND RELIEF REQUESTED

6. Plaintiff requests preservation and nothing more. Plaintiff does not ask the Court to halt the Department of Defense's acquisition-reform policy generally or to modify any contract. Plaintiff requests that the existing CAS cost-segregation records for the seven specific Covered Contracts not be modified, consolidated, converted, or destroyed while the Court decides the merits, and that Defendants maintain CAS cost segregation for any new cost data generated for those specific contracts pending the Court's decision.

7. The need is urgent. The September 14, 2026 memorandum establishes a 30-day compliance window expiring on or about October 14, 2026 — **22 days from the date of this motion.** Converting segregated cost records to consolidated commercial records is irreversible. The SBMC program is transitioning from Phase One to Phase Two, with 170 Phase Two prototypes to be delivered and testing slated to begin in late January or early February

2027. New cost data generated during Phase Two will be collected under GAAP and will never have CAS cost segregation.

## II. BACKGROUND

8. Plaintiff is a non-party inventor who asserted a claim of inventorship under 35 U.S.C. § 256 and who is a Movant-Appellant/Petitioner in the Federal Circuit, Appeal No. 26-1721.

9. On May 15, 2026, Plaintiff filed a Motion for Constructive Trust and Escrow Framework (Doc. 19) in the Federal Circuit (Appeal No. 26-1721). The filing was never properly entered. On September 21, 2026, Plaintiff filed Doc. 47 requesting severance of Doc. 19 into a standalone record and an interim financial preservation order (Item 7) staying GAAP conversion for the specific contracts at issue. Doc. 47, Section III, independently identifies the Feinberg memoranda as the source of the emergency. Doc. 19 has remained undisposed for 130 days.

10. Plaintiff's 2009 public disclosure at firstlastname.com, bearing Plaintiff's full legal name, describes the signal processing architecture underlying the patents at issue. The disclosure is incorporated in the CAFC appendix for Appeal No. 26-1721 and is docketed on the related PTAB IPR proceeding.

11. Plaintiff intends to file a separate civil action under 18 U.S.C. § 1595 arising from the same facts. This action is not a § 1595 claim. It preserves the records for that separate, anticipated proceeding.

12. Plaintiff's anticipated action in the United States Court of Federal Claims under 28 U.S.C. § 1498 for "reasonable and entire compensation" for government use of the patented technology will require identification and isolation of proceeds attributable to that technology. CAS cost-segregation records are the only accounting records capable of

performing that isolation. This action is not a § 1498 claim. It preserves the records for that separate, future proceeding.

13. On August 18, 2026, Defendant Feinberg issued a memorandum directing Department of Defense components to extract cost data from contractors' systems by automated interface for all contracts ≥ $10 million. (Exhibit A.)

14. On September 14, 2026, Defendant Feinberg issued a second memorandum, "Fostering One Strong Industrial Base," directing the Department of Defense to shift from CAS to GAAP as the default accounting framework and, within 30 days, to discontinue "shadow CAS" practices. (Exhibit B.)

15. By statute, the Cost Accounting Standards Board has exclusive authority to prescribe, amend, and rescind cost accounting standards. 41 U.S.C. § 1502(a)(1).

16. GAAP does not provide the contract-level cost segregation that CAS provides. The conversion from CAS to GAAP is not a file format change. It is a restructuring of the data model. CAS requires contract-level cost pools, indirect rate allocations, and labor-hour tracing to specific contracts. GAAP does not. The conversion dissolves the cost pools into aggregate R&D and overhead lines that cannot be re-segregated. The information is not preserved in a different structure. It is destroyed by the act of conversion.

17. The Covered Records are the CAS cost-segregation records for the following specific contracts (the "Covered Contracts"): (a) the Anduril SBMC prototype contract ($159M, partnered with Meta Platforms Inc., Qualcomm Technologies, OSI, Gentex Corp., and Oakley Inc. (a subsidiary of EssilorLuxottica S.A., defendant in Solos v. Meta, 1:26-cv-10304 (D. Mass.))); (b) the Rivet SBMC prototype contract ($195M); (c) the Elbit America SBMC prototype contract ($120.5M, partnered with Booz Allen Hamilton for AI); (d) the

Kopin IBAS contract ($15.4M, with SBMC display contributions projected at $350–500 million over the program's life); (e) the Lockheed Martin NGSRI Phase 2 contract; (f) the $2.4M international thermal weapon sight order; and (g) the $3.6M European military helmet display order; (h) the Scale AI CDAO contract ($500M ceiling, May 2026). (This contract involves Top Secret and SCI-level access. Plaintiff anticipates that any preservation or discovery order covering this contract will require a protective order under FRCP 26(c) and, if necessary, the appointment of a special master with appropriate security clearances.)

18. Plaintiff is not a party to those contracts. Plaintiff's interest in the Covered Records is as a litigant whose pending Motion for Constructive Trust and Escrow (Doc. 19, CAFC No. 26-1721) and pending § 256 inventorship correction require them as evidence and as the basis for calculating statutory compensation in Plaintiff's anticipated Court of Federal Claims action under 28 U.S.C. § 1498.

19. The SBMC program is the successor to the IVAS program. The $21.88 billion production contract was transferred from Microsoft to Anduril in February 2025. The SBMC program is transitioning from Phase One to Phase Two. Anduril publicly announced on August 17, 2026 that it is "moving from phase one to phase two," with 170 Phase Two prototypes to be delivered and testing slated to begin in late January or early February 2027. Doc. 47, Item 7, requests the same CAS preservation relief sought in this action, but is directed at the contracting parties within the CAFC proceeding. This action is directed at the officials who issued the September 14, 2026 memorandum and is the independent APA/mandamus mechanism to enjoin its execution. (Exhibit D.)

**III. LEGAL STANDARD**

20. A party seeking a temporary restraining order or preliminary injunction must demonstrate that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

21. Where the United States is the opposing party, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

22. The purpose of interim relief is to preserve the relative positions of the parties until the merits can be decided. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

## IV. ARGUMENT

### A. Plaintiff Is Likely to Succeed on the Merits.

#### 1. Plaintiff has standing.

23. Standing requires an injury in fact, fairly traceable to the challenged action, that a favorable decision is likely to redress. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

24. Plaintiff's injury is the loss of the Covered Records needed to (i) enforce the constructive trust and escrow framework Plaintiff moved for in the Federal Circuit (Doc. 19, No. 26-1721), (ii) calculate "reasonable and entire compensation" in Plaintiff's anticipated action in the United States Court of Federal Claims under 28 U.S.C. § 1498, and (iii) establish proceeds attributable to the technology in Plaintiff's anticipated 18 U.S.C. § 1595 action.

25. That loss would result directly from converting the Covered Records, and an order preserving those records would redress it.

26. Plaintiff does not assert a contractual interest in the Covered Records. Plaintiff asserts that the Covered Records are evidence and the basis for statutory compensation in Plaintiff's pending and anticipated claims, and that their destruction would cause Plaintiff irreparable harm to those claims.

#### 2. The memorandum is final agency action.

27. Agency action is final when it marks the consummation of the agency's decision-making process and determines rights or obligations or produces legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

28. The September 14 memorandum sets binding deadlines for Department of Defense components and governs how the Department treats contractor cost data.

**3. The memorandum exceeds statutory authority as applied to contracts that remain subject to CAS.**

29. Congress vested the CAS Board with "exclusive authority to prescribe, amend, and rescind" cost accounting standards. 41 U.S.C. § 1502(a)(1).

30. A department-level memorandum cannot displace that authority.

31. The memorandum itself acknowledges that CAS continues to apply by law to certain programs until the Board acts, stating: "By law, the Pentagon will still need to apply CAS to sole source development programs until it can work within the government-wide CAS Board to change the standards of CAS to GAAP." (Exhibit B, p. 2.)

32. To the extent the Department of Defense directs components to stop applying, verifying, or maintaining CAS-based cost segregation on contracts that remain subject to CAS by statute and regulation, the Department acts "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

**4. The memorandum is arbitrary and capricious.**

33. An agency action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

34. Plaintiff alleges that Defendants failed to consider (i) the irreversible loss of contract-level cost records, (ii) the effect of that loss on pending proceedings that depend on them, and (iii) the fact that the SBMC program is transitioning to Phase Two, meaning new cost data will be generated under GAAP and will never have CAS cost segregation.

**B. Plaintiff Will Suffer Irreparable Harm Without Relief.**

35. Irreparable harm must be "certain and great," "actual and not theoretical," and imminent. *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

36. The harm here has a fixed date: the 30-day window closes on or about October 14, 2026 — **22 days from the date of this motion.**

37. Once segregated records are consolidated, the historical divisions cannot be reconstructed, and no subsequent discovery order or money judgment can restore them.

38. The loss is of evidence, not merely of money.

39. The harm is not a one-time event. It is ongoing and compounding. The patented technology at issue is foundational. It is a component incorporated into multiple Department of Defense programs, including SBMC, Project EagleEye (Anduril's SBMC submission), and Project ARIA (Army Rapid Implementation of AI, launched March 5, 2026). The contracts through which the technology is deployed include, without limitation: the $21.88B novated IVAS/SBMC production contract; the $159M, $195M, and $120.5M SBMC OTAs; the $15.4M Kopin IBAS contract; and the Lockheed Martin NGSRI Phase 2 contract. CAS cost segregation is the only accounting framework capable of isolating the portion of those proceeds attributable to the specific technology. GAAP consolidated reporting buries component-level costs in the overall system cost, rendering it impossible to determine what share of contract value is attributable to the patented technology versus other components.

40. The SBMC program is transitioning from Phase One to Phase Two. If the CAS-to-GAAP conversion is complete before Phase Two cost data is generated (testing January–February

2027), that data will be collected under GAAP and will never have CAS cost segregation. No court can order the retroactive creation of records that were never collected in that format.

41. The loss for those future stages is not the destruction of existing evidence. It is the **prevention of evidence from ever being created.**

42. The foundational nature of the technology means that future Department of Defense programs will incorporate it as well. Each new program that deploys the technology under a GAAP-only framework creates an additional layer of untraceable proceeds. The harm compounds with each new program, each new prototype stage, and each new contract.

43. The result is not a single, fixed loss on October 14. It is the permanent destruction of the only records capable of determining what portion of the Covered Contracts' value is attributable to the patented technology at issue. That determination is necessary to (i) enforce the constructive trust and escrow framework Plaintiff moved for in the Federal Circuit (Doc. 19), (ii) calculate "reasonable and entire compensation" in Plaintiff's anticipated Court of Federal Claims action under 28 U.S.C. § 1498, and (iii) establish proceeds in Plaintiff's anticipated 18 U.S.C. § 1595 action. Once the records are converted, that determination becomes impossible. No court can order the retroactive creation of cost-segregation data that was never collected in that format.

**C. The Balance of Equities and the Public Interest Favor Preservation.**

44. The requested relief is narrow. It is limited to the seven specific Covered Contracts identified in paragraph 17 of this memorandum and paragraph 32 of the Complaint. It requires no new work beyond maintaining an existing data-collection format. It asks

Defendants only to preserve existing records and to continue segregating new records for those specific contracts.

45. Preserving records that already exist imposes minimal cost on Defendants. Defendants remain free to pursue their policy in every other respect.

46. The public has a strong interest in agencies acting within the authority Congress conferred, and in preserving the evidence that courts require to adjudicate pending disputes.

**D. The Court Should Enter the Proposed Order or, Alternatively, a Preservation-Only Order.**

47. The proposed order states its terms specifically and describes the restrained acts, as Rule 65(d)(1) requires.

48. The order binds the parties, their officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with them who receive actual notice. Fed. R. Civ. P. 65(d)(2).

49. To ensure that notice reaches the personnel who hold the records, the order directs Defendants to transmit a copy to the contracting officers responsible for the Covered Contracts.

50. If the Court declines the broader relief requested, Plaintiff requests in the alternative an order that Defendants preserve, and not direct or permit the modification, conversion, or deletion of, the Covered Records pending further order of this Court.

**E. Security Under Rule 65(c) and Expedited Hearing.**

51. Rule 65(c) permits the Court to set security "in an amount that the court considers proper."

52. Because preserving existing records and maintaining an existing data-collection format will not cause Defendants any cognizable cost or damage, Plaintiff requests that security be set at a nominal amount or waived.

53. Plaintiff further requests that the Court set the preliminary-injunction hearing on an expedited schedule under LCvR 65.1, and that any temporary restraining order remain in effect for the period permitted by Rule 65(b)(2) unless extended for good cause.

**V. CONCLUSION**

54. Plaintiff respectfully requests that the Court grant this motion and enter the attached proposed order.

Dated: September 22, 2026

Respectfully submitted,

Daitona Carter, Plaintiff, Pro Se
General Delivery, Main Post Office
2 Massachusetts Ave NE
Washington, DC 20002
No Phone. All communications by email only.
legal@daitonacarter.com

## CERTIFICATE REGARDING NOTICE

Pursuant to LCvR 65.1(a), Plaintiff certifies as follows:

1. No counsel of record has appeared for Defendants in this action.

2. Plaintiff has not served Defendants with this motion because the action is being filed on September 22, 2026, and Defendants have not yet been served with process.

3. Plaintiff requests that the Court issue a temporary restraining order without prior notice to Defendants under Fed. R. Civ. P. 65(b)(1)(A) because:

   (a) The 30-day conversion deadline expires on or about October 14, 2026;

   (b) The harm — destruction of CAS cost-segregation records — is irreversible;

   (c) There is no adequate remedy at law for the loss of those records;

   (d) Prior notice would permit Defendants to complete the conversion before a hearing could be held.

4. Plaintiff will serve Defendants with this motion and the Complaint immediately upon service of process.

Dated: September 22, 2026

Respectfully submitted,

Daitona Carter

Daitona Carter, Plaintiff, Pro Se
General Delivery, Main Post Office
2 Massachusetts Ave NE
Washington, DC 20002
No Phone. All communications by email only.
legal@daitonacarter.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAITONA CARTER,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN A. FEINBERG, Deputy Secretary of Defense; and<br>PETE HEGSETH, Secretary of Defense,<br><br>Defendants. | Case No. |

**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Upon Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, and good cause shown, it is hereby ORDERED that:

1. Defendants, their officers, agents, servants, employees, contractors, and attorneys, and all persons in active concert or participation with them who receive actual notice of this Order, are **ENJOINED** from modifying, consolidating, converting, deleting, overwriting, or rendering inaccessible any CAS (Cost Accounting Standards) cost-segregation records for the following specific contracts (the "Covered Contracts"):

   (a) Anduril Industries SBMC prototype contract ($159M);

   (b) Rivet Industries SBMC prototype contract ($195M);

   (c) Elbit Systems of America SBMC prototype contract ($120.5M);

   (d) Kopin Corporation IBAS contract ($15.4M);

   (e) Lockheed Martin NGSRI Phase 2 contract;

   (f) $2.4M international thermal weapon sight order;

   (g) $3.6M European military helmet display order.

(h): Scale AI CDAO contract ($500M ceiling, May 2026).

2. Defendants shall maintain CAS cost segregation for any new cost data generated for the Covered Contracts and for SBMC Phase 2 prototyping and testing (scheduled to begin January–February 2027), pending further order of this Court.

3. This Order **DOES NOT** enjoin the September 14, 2026 memorandum titled "Fostering One Strong Industrial Base" as to any other contract, program, or procurement. Defendants may implement the memorandum in full for all DoD contracts, programs, and procurements not listed in paragraph 1 above.

4. Within five (5) days of entry of this Order, Defendants shall transmit a copy of this Order to the contracting officers responsible for the Covered Contracts.

5. No security is required pursuant to 28 U.S.C. § 1915.

6. A hearing on Plaintiff's Motion for Preliminary Injunction shall be held on __________, or as soon as practicable thereafter, at which time Defendants may show cause why this Order should not be continued.

7. This Order shall remain in effect until the Court rules on Plaintiff's Motion for Preliminary Injunction, or for fourteen (14) days under Rule 65(b)(2)(B), whichever is earlier, unless extended for good cause.

**SO ORDERED.**

Dated: September ___, 2026

______________________________
United States District Judge
District of Columbia