**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAITONA CARTER,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN A. FEINBERG, in his official capacity as Deputy Secretary of Defense;<br><br>PETE HEGSETH, in his official capacity as Secretary of Defense; and<br><br>WALTER JAY CLAYTON, in his official capacity as Director of National Intelligence,<br><br>Defendants. | Case No. 1:26-cv-03318-APM<br>Judge Amit P. Mehta |

**EMERGENCY RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER**
**UNDER FED. R. CIV. P. 65(b)**

Plaintiff renews her motion for a temporary restraining order under Rule 65(b) on the ground that the circumstances have materially changed since the Court's Order of October 13, 2026. The conversion that was 22 days away when the original motion was filed is executing tomorrow. The Order failed to address multiple independent grounds for relief raised in the motions and the Amended Complaint.

This is a renewed motion. The Court's Order of October 13, 2026 (ECF No. 21) denied Plaintiff's prior TRO/PI motions (ECF Nos. 3, 13, 15). This is a renewed motion for a temporary restraining order under Rule 65(b). The Court's Order of October 13, 2026 (ECF No. 21) denied Plaintiff's prior TRO/PI motions (ECF Nos. 3, 13, 15). The circumstances have materially changed since the Order was entered: the conversion that was 22 days away when the original

RECEIVED
OCT 13 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

motion was filed is executing tomorrow. The Order also failed to address multiple independent grounds for relief raised in the motions and the Amended Complaint, and the 'speculative injury' finding is built on a legal and factual error in the underlying D. Mass. intervention denial.

## I. THE "SPECULATIVE" FINDING IS BUILT ON A LEGAL AND FACTUAL ERROR

### A. The D. Mass. court applied the wrong procedural standard.

The Court's "speculative" finding (ECF No. 21) rests entirely on the D. Mass. court's holding that Plaintiff "ha[d] not sufficiently alleged that she has a protectible interest" (*Solos Tech. Ltd. v. Meta Platforms, Inc.*, 26-cv-10304 (D. Mass. Apr. 15, 2026), ECF No. 90). That holding required Plaintiff to *prove* § 256 inventorship at the intervention stage. Rule 24(a)(2) does not require proof of the underlying claim. It requires a showing of "an interest relating to the property or transaction" that "may, as a practical matter, impair or impede" the movant's ability to protect that interest. The D. Mass. court's own order cites *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 543 (1st Cir. 2006), for the proposition that "the Court accepts as true non-conclusory allegations made in support of the motion to intervene."

Plaintiff's 2009 public disclosure (bearing her full legal name), 2013–2019 source code with file-system timestamps, 2016 and 2019 physical prototypes, and 2019 EWC registration are specific, dated, and verifiable. They are not "conclusory" in any legally cognizable sense. The D. Mass. court's "conclusory" finding is unsupported by the record. See Attachment 1 - Exhibit K, attached hereto, which indexes the specific source code files, directory logs, OCR scripts, prototype documentation, and contemporaneous public records from D. Mass. Doc. 83 (Attachments 83-1 through 83-10), preserved in the certified Federal Circuit Appendix (Case No. 26-1721, Doc. 29-1 through 29-3).

**B. The supplemental exhibits were in the docket before the denial was entered.**

Plaintiff filed a Rule 15(d) motion (D. Mass. Doc. 85) to supplement the record with technical exhibits. The procedural record shows:

- **March 26, 2026:** Plaintiff conferred with opposing counsel (LCvR 7.1(A)(2) certification under penalty of perjury)
- **April 10, 2026:** Supplemental exhibits uploaded to the docket
- **April 13, 2026:** Notice provided to all counsel of record
- **April 15, 2026:** ECF No. 90 entered, denying intervention as "conclusory" and all pending motions as moot

The "conclusory" finding was entered **two days after opposing counsel was notified** of the supplemental exhibits. The exhibits were in the docket. The Rule 15(d) motion formally bound them to the record. The court had them. The court still ruled the allegations were "conclusory."

**C. The procedural sequence.**

On April 9, 2026, the D. Mass. court granted Plaintiff leave to file ECF Nos. 77, 78, and 79. On April 10, Plaintiff filed a Motion for Status Conference (ECF 80) flagging the bottleneck created by the unruled sealing and protective motions (ECF 59, 62). A writ of mandamus was posted compelling ADA accommodation and ECF access. **Forty-seven minutes later**, ECF No. 90 was entered.

The motions that would have allowed Plaintiff to file the technical evidence (ECF No. 65) and to have it reviewed in camera (ECF No. 62) were not ruled on. They were denied as a consequence of the intervention denial.

After ECF No. 90, Plaintiff filed ECF No. 92 (65 technical attachments, including source code with file-system timestamps of October 25, 2017 and May 2, 2017 — predating Meta's September 16, 2020 Project Aria announcement by approximately 3 years). The system displayed them as "-1" placeholders (ECF No. 94, system stamp ID 1029851931). Reconsideration (ECF No. 107) and Rule 60 relief (ECF No. 113) were denied. The complete record is preserved in the certified Federal Circuit Appendix (Case No. 26-1721, Doc. 29-1 through 29-3).

**D. This Court's "speculative" finding is derivative.**

The "speculative" characterization in ECF No. 21 is a restatement of the D. Mass. "no protectible interest" holding. That holding applied the wrong procedural standard and was entered after the supplemental exhibits were in the docket and opposing counsel was on notice. The "speculative" finding is likewise unsupported.

## II. THE ORDER FAILED TO ADDRESS MULTIPLE INDEPENDENT GROUNDS FOR RELIEF

The Order (ECF No. 21) analyzes only the "speculative" nature of Plaintiff's pending CAFC appeal. It does not address the following independent grounds raised in the motions and the Amended Complaint:

**A. The trademark and Project ARIA.**

Plaintiff's Amended Complaint (ECF No. 14, ¶ 39) alleges that the U.S. Army's active deployment of "Project ARIA" (Army Rapid Implementation of AI, launched March 5, 2026) within the SBMC procurement pipeline constitutes ongoing infringement of Plaintiff's common-law mark "ARIA." The Order does not address this claim. The trademark deployment was public and ongoing for five months before the complaint was filed. The injury is not contingent on the

CAFC appeal. The Anduril SBMC contract partner Oakley Inc. is a subsidiary of EssilorLuxottica, a defendant in *Solos v. Meta*.

**B. The TVPA and § 1498 preservation claims.**

Plaintiff's Amended Complaint (ECF No. 14, ¶¶ 11–12) identifies the CAS records as necessary to (i) calculate proceeds in an anticipated 18 U.S.C. § 1595 action, (ii) calculate "reasonable and entire compensation" in an anticipated Court of Federal Claims action under 28 U.S.C. § 1498, and (iii) confirm at the contract level through labor-hour tracing that the work was performed by Plaintiff (¶ 18). The Order does not address any of these claims. It does not say the TVPA claim is not a basis for preservation. It does not say the § 1498 claim is not a basis for preservation. It does not say the labor-hour tracing is not a basis for preservation. It simply does not reach them.

**C. The Feinberg memo's own admission.**

Defendant Feinberg's September 14, 2026 memorandum (Exhibit B, p. 2) states: "By law, the Pentagon will still need to apply CAS to sole source development programs until it can work within the government-wide CAS Board to change the standards of CAS to GAAP." The Order does not address this admission. The SBMC contracts arise from the $21.88B IVAS production contract, which was novated from Microsoft to Anduril in February 2025. If the defendant's own memorandum concedes that CAS applies to sole-source development programs, the conversion of these specific contracts is an action in excess of statutory authority under 41 U.S.C. § 1502(a)(1) and 5 U.S.C. § 706(2)(C).

**D. The CAFC is already being asked for the same relief.**

Plaintiff's Doc. 47 (CAFC, filed 9/21/26) independently requested an interim financial preservation order staying the GAAP conversion for the specific contracts at issue. The CAFC

has not ruled. The Amended Complaint (ECF No. 14, ¶ 19) explains that Doc. 47 is directed at the contracting parties within the CAFC proceeding, while this action is directed at the officials who issued the September 14 memorandum. The Order does not address this jurisdictional distinction or the pending CAFC request for the same relief.

**E. The APA claims.**

The Amended Complaint alleges two independent APA claims: (1) the September 14 memorandum is an action in excess of statutory authority under 41 U.S.C. § 1502(a)(1) and 5 U.S.C. § 706(2)(C), and (2) the memorandum is arbitrary and capricious under 5 U.S.C. § 706(2)(A) because Defendants failed to consider the irreversible nature of the data conversion, the effect on pending federal proceedings, and the SBMC Phase Two transition. The Order does not address either claim.

**F. The alternative preservation-only order.**

Plaintiff's original TRO motion (ECF No. 3, ¶ 50) requested, in the alternative, an order that Defendants "preserve, and not direct or permit the modification, conversion, or deletion of, the Covered Records pending further order of this Court." The Order does not address the alternative.

**G. The ex parte TRO request and the Clayton-specific grounds.**

Plaintiff's Clayton TRO motion (ECF No. 15) requested a TRO without prior notice to Defendant Clayton under Rule 65(b)(1)(A) because "prior notice would permit Defendant Clayton to complete the classification before a hearing could be held" (Certificate Regarding Notice, ¶ 3). The Order does not address the ex parte request or the Clayton-specific grounds.

**H. The classification / removal-from-judicial-reach claim.**

The Amended Complaint (ECF No. 14, ¶ 19) and the Clayton TRO (ECF No. 15, ¶ 5) allege that the CAS cost-segregation records for the Covered Contracts are within the operational scope of Intelligence Community programs under Defendant Clayton's DNI jurisdiction, including Project ARIA, Project EagleEye, and SBMC. They further allege that the 65 technical forensic files (D. Mass. docket), the Alpaca Securities account records, the NYC hotel guest records and communication logs (February–April 2026), the lodging and academic records documenting DOD/IC official presence and corporate account payments, and the CAFC appellate record (No. 26-1721) would, if classified or placed under a SAP by Defendant Clayton, be removed from the jurisdiction of the courts in which they are pending.

The "Super Intelligence Force" task force (announced October 4, 2026) is led by Defendant Clayton in his dual capacity as DNI and AI Czar. Defendant Hegseth, Secretary of Defense, is a member. Emil Michael, Under Secretary of War for Research and Engineering and Chief Technology Officer, serves as vice chair and has operational control over the DoD AI systems (GenAI.mil, CDAO) that execute the record-restructuring mandated by the Feinberg memorandum (NBC News, Oct 4, 2026; Politico EU, Oct 7, 2026; Defense One, Oct 5, 2026). The task force report is due approximately January 2027 — the same window in which SBMC Phase Two cost data will be generated.

The obvious, unconsidered consequence of classifying the Covered Records is that the pending proceedings in this Court, the D. Mass. court, and the CAFC become moot — a litigation outcome, not a national security consequence (ECF No. 15, ¶ 23). Administrative declassification under 50 U.S.C. § 3594 is an illusory remedy that cannot replace active civil discovery on any judicial timeline (ECF No. 15, ¶ 26).

**I. The 10/13 supplemental filing.**

Plaintiff's Supplemental Memorandum (318 pages, dated 10/13/2026), which documents the task force composition, the Clayton/Apollo/Fireblocks/Alpaca institutional connections, and the IBAS manufacturing milestones, was submitted to the Clerk's Office on the same day the Order was entered. As of the Order's entry at 3:59 PM, the supplemental had not been docketed. The Order was entered before the supplemental was visible on the docket.

**J. Institutional context.**

The Covered Records implicate entities with documented financial relationships to the defendants, as detailed in Plaintiff's Supplemental Memorandum (filed 10/13/2026) and preserved in the CAFC record (Doc. 41, Exhibit L; Doc. 42).

## III. THE CIRCUMSTANCES HAVE MATERIALLY CHANGED

The original TRO motion sought to prevent a future conversion. The conversion is executing **tomorrow**, October 14, 2026. The Court cited *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) in ECF No. 21 and found the injury "speculative." The Amended Complaint (ECF No. 14, ¶¶ 35–36) applies the same standard and identifies a fixed date: October 14, 2026. The harm is not theoretical. It is scheduled.

Three concurrent events lock the loss at three levels: the CAS-to-GAAP conversion (Oct 14) dissolves existing cost pools; the AI task force report (~Jan 2027) locks GAAP as policy; and the SBMC Phase Two data generation (Jan–Feb 2027) produces new data under GAAP only. No single court order can unwind all three. The TRO is the only mechanism that addresses all three simultaneously (ECF No. 15, ¶ 24).

The loss for the Phase Two stages is not the destruction of existing evidence. It is the **prevention of evidence from ever being created** (ECF No. 14, ¶ 41).

## IV. IRREPARABLE HARM

The loss is of evidence, not merely of money (ECF No. 14, ¶ 38). Once segregated records are consolidated, the historical divisions cannot be reconstructed, and no subsequent discovery order or money judgment can restore them (¶ 37). The harm is ongoing and compounding because the technology is incorporated into multiple DoD programs — SBMC, Project EagleEye, and Project ARIA — and the SBMC Phase Two cost data (January–February 2027) will be collected under GAAP from day one (¶¶ 39–40). No court can order the retroactive creation of records that were never collected in that format.

Destroying or converting these cost-segregation records destroys the precise evidentiary tool needed to prove sole inventorship and unmask who received public funds for appropriated technology, directly shielding the infringing parties from fraud and misappropriation liability (ECF No. 15, ¶ 13).

## V. BALANCE OF EQUITIES AND PUBLIC INTEREST

The requested relief requires no new work. It asks Defendants only to continue collecting CAS cost-segregation data for the specific Covered Contracts in the format they are already

collecting it (ECF No. 14, ¶ 44). Defendants remain free to pursue their policy in every other respect (¶ 45). The government's interest in completing the broader CAS-to-GAAP transition is not impaired. The plaintiff's interest is in preserving the only records capable of tracing proceeds attributable to her technology across four federal proceedings. The public has a strong interest in agencies acting within the authority Congress conferred (¶ 46).

The Clayton-specific relief requires no declassification, no disclosure, and no new work beyond refraining from a classification action. All existing classifications remain in effect (ECF No. 15, ¶¶ 6, 29). A DNI who classifies the records in a pending case to render that case moot is not protecting national security. He is protecting the parties whose conduct is at issue (ECF No. 15, ¶ 30). The balance of equities favors preservation.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1. Enter a TRO enjoining Defendants Feinberg and Hegseth from executing the September 14, 2026 memorandum as to the CAS cost-segregation records and contract-level audit trails for the Covered Contracts identified in ECF No. 14, ¶ 17, pending the later of: (a) final resolution of this action, or (b) the generation and CAS-segregated preservation of Phase Two SBMC cost data, currently slated for late January to early February 2027;

2. In the alternative, enter a preservation-only order directing Defendants to preserve, and not direct or permit the modification, conversion, or deletion of, the Covered Records pending further order of this Court (ECF No. 3, ¶ 50);

3. Additionally, enjoin Defendant Clayton, in his official capacity as DNI, from newly classifying, designating as a Special Access Program, or otherwise removing

from judicial reach any record identified in ECF No. 15, ¶ 5(a) through (i), pending further order of this Court;

4. Grant an emergency hearing on this motion before the October 14, 2026 CAS conversion deadline; and

5. Grant such other relief as the Court deems just.

October 13, 2026

Respectfully submitted,

Daitona Carter, Plaintiff, Pro Se
General Delivery, Main Post Office
2 Massachusetts Ave NE
Washington, DC 20002
No Phone. All communications by email only.
legal@daitonacarter.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, a true and correct copy of the foregoing Cured Motion for CM/ECF Access and Emergency Renewed Motion for TRO was served upon all counsel of record and upon the United States Attorney for the District of Columbia and the United States Attorney General by hand-delivery to the Clerk's Office, 333 Constitution Ave NW, Room 1225, and by email to dcd_intake@dcd.uscourts.gov. A courtesy copy was provided to the Chambers of Judge Amit P. Mehta.

October 13, 2026

Respectfully submitted,



Daitona Carter, Plaintiff, Pro Se
General Delivery, Main Post Office
2 Massachusetts Ave NE
Washington, DC 20002
No Phone. All communications by email only.
legal@daitonacarter.com