**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAITONA CARTER,

Plaintiff,

v.

STEPHEN A. FEINBERG, in his official capacity as Deputy Secretary of Defense;

PETE HEGSETH, in his official capacity as Secretary of Defense; and

WALTER JAY CLAYTON, in his official capacity as Director of National Intelligence,

Defendants.

Case No. 1:26-cv-03318-APM

Judge Amit P. Mehta

**PLAINTIFF'S CORRECTED MOTION TO CORRECT FACTUAL AND LEGAL ERRORS IN THE COURT'S NOVEMBER 6, 2026 MINUTE ORDER PURSUANT TO RULES 54(b) AND 60(a)**

Plaintiff Daitona Carter ("Carter"), appearing pro se, respectfully moves this Court under Federal Rules of Civil Procedure 54(b) and 60(a) to correct factual and legal errors in its November 6, 2026 Minute Order. This Motion is necessary to correct an inaccurate procedural narrative that has been propagated across multiple dockets as "judicial currency" to deny Plaintiff's constitutional claims.

# I. MEMORANDUM OF POINTS AND AUTHORITIES

## A. The Court's Finding of "No New Circumstances" Is Factually Erroneous

The Court's November 6 Order states that "no new circumstances warrant reconsideration of the court's prior denials." The Court references its October 14, 2026 Minute Order. The following circumstances arose after that order and were not before the Court when it ruled:

- October 31 and November 1, 2026: Retaliatory police contacts targeting Plaintiff and her child in New York City.
- November 2, 2026: OpenAI publicly announced the hiring of former Secretary of the Army Dan Driscoll, who had direct signing authority over the contested SBMC contracts and US ARMY Project ARIA.
- November 2-3, 2026: Mercedes-Benz publicly unveiled its "Holo Display" HUD technology and announced a partnership with Meta to integrate Meta smart glasses into Mercedes vehicles beginning early 2027.
- November 4, 2026: The DOJ publicly released the memorandum establishing the Super Intelligence Task Force (DOJ-SITF), which has since entered on the docket in this matter.
- November 5, 2026: Harmeet Dhillon, Assistant Attorney General for the Civil Rights Division, resigned.
- November 6, 2026: John Eisenberg, Assistant Attorney General for the National Security Division, resigned.

- November 6, 2026: Jason Reding Quinones, U.S. Attorney for the Southern District of Florida, resigned.

The November 14, 2026 CASB deadline is not merely a date by which existing records will be converted. It is the date by which the format for the SBMC Phase Two data generation (beginning January 2027) is locked in. If the CAS-GAAP transition is implemented, Phase Two cost-segregation records will never be created in the native format used for Phase One. The irreparable harm is both the destruction of the past record and the prevention of the future record. The "no new circumstances" finding ignores the deadline operates prospectively as well as retrospectively.

Under Lemmons v. Georgetown Univ. Hosp., 241 F.R.D. 15, 21 (D.D.C. 2007), reconsideration is warranted where "a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." The entry of the DOJ-SITF on the docket, the coordinated resignation of three DOJ enforcement officials, and the real-time commercial deployment of the architecture at issue (Mercedes Holo Display, Meta/Mercedes partnership) constitute significant changes in the facts that were not before the Court on October 14.

### B. The Docket Entry for ECF No. 22 Was Modified Post-Ruling

The docket entry for ECF No. 22 reflects: "Emergency Renewed MOTION for Temporary Restraining Order... Added MOTION for Preliminary Injunction on 10/14/2026 (mg)." The Court's October 14 Minute Order states: "The court treats Plaintiff's motion as one for reconsideration under Federal Rule of Civil Procedure 54(b)." The Court did not rule on ECF No. 22 as a Preliminary Injunction. It ruled on it as a TRO, converted it to a reconsideration, and denied it on that basis. The post-ruling addition of the PI label to the docket entry by the clerk creates a record

that did not exist at the time of the ruling. The Court's November 6 statement that this is Plaintiff's "third attempt at preliminary injunctive relief" relies on a docket entry that was modified after the ruling to support a count the Court's own order does not reflect.

**C. The Court Improperly Relied on Pending-Appeal Orders From a Case That Is the Title-Cleaning Mechanism for the SBMC Display Supply Chain**

The Court's October 14 Minute Order states: "her insistence that the Massachusetts district court wrongly denied her intervention motion is unconvincing." The November 6 Order builds on this to deny the current motion. This reliance is legally improper:

1. All three cited orders are under active appeal. CAFC No. 26-1721 covers ECF Nos. 90, 107, and 113 in *Solos v. Meta*. Orders under active appellate review are not settled law and cannot serve as binding "judicial currency" in a separate district court action.

2. The case is the title-cleaning mechanism for the SBMC display supply chain, and the ruling mischaracterizes the scope of Plaintiff's work. Solos Technology's parent company is owned in part by Kopin Corporation, the sole U.S.-based supplier of critical microdisplays for defense AR/VR applications, holding active DoD contracts for SBMC including a $15.4M IBAS award (September 2025) and a Phase I SBIR for soldier-borne MicroLED displays (March 2026). Kopin's CEO has publicly stated the company's MicroLED capability "will go into multiple programs like Soldier Borne systems." The patents at issue in Solos v. Meta and six in PTAB IPR covers the Plaintiff's intellectual property and trade secrets some of which have yet to be raised in the court of law via an indepedent complaint.

Cleaning title on those patents through Solos v. Meta establishes the legal foundation for the SBMC display architecture manufactured by Kopin.

The work at issue is not limited to smart glasses. Plaintiff's architecture encompasses three distinct display form factors: (a) microdisplay/TV displays, now deployed through Kopin into SBMC; (b) wearable displays, the subject of Solos v. Meta; and (c) HUD displays, with a 2017 Mercedes Korea connection documented in Plaintiff's exhibits (Solos, ECF No. 92, D, Mass. April 17, 2026), now publicly confirmed by Mercedes-Benz's November 3, 2026 "Holo Display" announcement and its November 2, 2026 partnership with Meta to integrate Meta smart glasses into Mercedes vehicles beginning early 2027. *Solos Tech, Ltd. V Meta Platforms, Inc. et al.*, No. 1:26-cv-10304, ECF No. 107 (D. Mass. Apr 29, 2026) characterization of this as "generalized work in smart glasses technology" is a misstatement of the record.

1. The ruling was a procedural intervention ruling, not a substantive finding about Plaintiff's work. *Solos,* ECF No. 107's language about "generalized work in smart glasses technology" and the absence of "concrete, claim-level contributions" was made in the context of evaluating whether Plaintiff met the Rule 24(a) standard for intervention in Solos v. Meta. It is a ruling about her standing to join that specific case. It is not a finding that her work does not exist, is not connected to the patents, or was not extracted. A procedural ruling about the scope of intervention in a private patent dispute cannot be imported as "judicial currency" to deny a TRO in a constitutional APA challenge against the federal government.

2. The gag order was triggered by a DoD connection. Solos, ECF No. 110 (May 4, 2026) included exhibits connecting Plaintiff's technology to Northrop Grumman, a primary DoD contractor. Four days later, *Solos*, ECF No. 113 (May 8, 2026) denied

the motion and imposed a filing restriction: "during the pendency of her appeal, Carter must request leave of the Court before filing any further materials... Any further filings... will be struck. Should this not deter Carter, the Court will consider terminating her electronic filing privileges." The moment the DoD connection was made explicit, the court shut down further filings.

3. The procedural history undermines the rulings' reliability. The Burroughs Court granted leave to file evidence (*Solos*, ECF No. 86, April 13, 2026), then denied intervention two days later citing only pre-grant filings (*Solos*, ECF No. 90, April 15, 2026) without referencing the evidence it had just authorized. Plaintiff then filed 65+ exhibits in support of reconsideration (Solos, ECF Nos. 91, 92). The Burroughs Court reduced all of this to "generalized work" and threatened to terminate e-filing (Solos, ECF No. 107, April 29, 2026).

4. A district court cannot use pending-appeal orders – including a gag order triggered by a DoD contractor reference – from a case that is the title-cleaning mechanism for the SBMC display supply chain, to deny a Temporary Restraining Order in a constitutional APA challenge against the federal government.

### D. The Court's "Diligence" Finding Misrepresents the Docket Timeline and Creates a Circular Procedural Trap

The Court's November 6 Order states: "Plaintiff has yet to serve Defendants, despite filing this suit on September 22, 2026. The court will not grant injunctive relief when Plaintiff has not acted diligently in completing service."

This finding misrepresents the docket timeline:

1. The case was filed September 22, 2026. The Court did not assign a judge until October 7, 2026 – fifteen days after filing. The delay was attributable to the Court's own administrative processing, including the IFP determination.

2. Plaintiff requested the summons on October 7, 2026 (ECF No. 18). The Court issued the summons electronically on October 9, 2026 (ECF No. 19) – two days after the request.

3. Plaintiff had twenty-eight days (October 9 to November 6) to effect service. She is a pro se litigant proceeding in forma pauperis, residing outside the District. The Court's own processing consumed seventeen of the forty-five days between filing and the November 6 Order.

4. The Court's "diligence" finding is based on a legal standard that does not apply to the motion it denied. The November 6 Order denies Plaintiff's Standalone Motion for Preliminary Injunction (ECF No. 31) on the ground that "Plaintiff has yet to serve Defendants." Federal Rule of Civil Procedure 65 (a)(1) provides: "The court may issue a preliminary injunction only on notice to the adverse party." The rule requires *notice,* not completed Rule 4 service of summons. Rule 4 service governs the method of establishing jurisdiction over a defendant. It does not govern the prerequisite for the injunctive relief.

   Notice was satisfied. The named Defendants – Feinberg, Hegseth and Clayton – are the identical parties in CADC No. 26-5358. Assistant U.S.

Attorney Johnny Hillary Walker III has entered an appearance in that appeal as counsel of record for all three Defendants. The CADC docket contains the Notice of Appeal, the October 13, 2026 Order, the Clerk's briefing schedule order, and the Emergency Motion for Injunction Pending Appeal and for Administrative Stay (CADC Docket Entry 1208898517, October 15 2026). AUSA Walker, as counsel of record for the Defendants in the parallel appeal, has independent access to the full DDC docket – including Complaint (ECF No. 1 ) and Amended Complaint (ECF No. 14) – through CM/ECF. The Defendants have had actual , electronics notice claims in this action since October 14, 2026.

The Court reliance on unperfected Rule 4 service to deny a Preliminary Injunction where the adverse party has actual notice through parallel proceedings conflates two distinct procedural requirements.

5. The Court's October 13, 2026 Order (ECF No. 21) – the first denial of Plaintiff's TRO motions – was issued at 3:59 p.m. (NEF alert) and was subsequently modified on October 16, 2026 to include the Court's signature. A post-issuance modification of a court order is a docket integrity issue that affects the reliability of the record on which subsequent orders rely.

6. Plaintiff is within her time to serve. The summons was issued October 9, 2026. Plaintiff has until December 22, 2026 to effect service. The Court's "diligence" finding penalizes Plaintiff for a deadline she has not yet missed. A court cannot deny equitable relief on the ground that a party "has not acted diligently" when the party is still within the time permitted by law to act.

7. The law does not require completed Rule 4 service for a preliminary injunction. Federal Rule of Civil Procedure 65(a)(1) provides: "The court may issue a preliminary injunction only on notice to the adverse party." The rule requires *notice*, not completed service of a summons. Rule 4 governs the method of establishing jurisdiction over a defendant. It does not govern the prerequisite for injunctive relief. Where the adverse party has actual, electronic notice of the claims through parallel proceedings, the notice requirement of Rule 65(a)(1) is satisfied regardless of whether Rule 4 service has been perfected.

### E. The Coordinated Resignations of DOJ Enforcement Officials

On November 5, 2026, Harmeet Dhillon, Assistant Attorney General for the Civil Rights Division, resigned. On November 6, 2026, John Eisenberg, Assistant Attorney General for the National Security Division, resigned. On November 6, 2026, Jason Reding Quinones, U.S. Attorney for the Southern District of Florida, resigned. Each of these divisions had official knowledge and on-going notice.

These three officials headed the divisions with jurisdiction to investigate the conduct at issue in this action. Plaintiff filed reports to the Civil Rights Division and the National Security Division on November 5 and 6, 2026. The heads of those divisions departed on the same days the reports were filed. The simultaneous departure of all three enforcement authorities, within 48 hours of Plaintiff's reports, eliminates the administrative mechanisms through which the conduct at issue could be independently investigated.

The pattern extends beyond the DOJ. On May 8, 2026, the Solos v Meta court issued a gag order (ECF No. 113) restricting the Plaintiff's filings the moment Carter connected her technology to the DoD contractor, Northrop Grumman and Meta Materials (stock tickers $MMAT, $MMTLP). Ten days later, on May 18, 2026, FBI agents searched the home of David Rush, a former senior CIA officer in the Directorate of Science and Technology, and seized 303 gold bars valued at over $40 million, $2 million in cash, and 35 luxury watches. According to public records, Rush had fabricated a "highly classified" government program to justify acquiring the gold bars and foreign currency as "work-related expenses." He was arrested on May 19, 2026, Three days later, on May 22, 2026, Director of National Intelligence Tulsi Gabbard (who had personal and professional notice and professional knowledge of Carter's situation and claims) announced her resignation – effective June 19, 2026 – after establishing an Intelligence Community Task Force to Restore Transparency.

Amaryllis Fox Kennedy who severed simultaneously as Deputy Director of National Intelligence for Policy and Capabilities and Associate Director for Intelligence and International Affairs at the OMB – overseeing the budgets of all eighteen intelligence agencies – resigned in May 2026 and publicly stated "I could not keep signing the checks. I would have become complicit." She added: "Until there's functional oversight of the intelligence community's ample and unsupervised movement of money and gold, we are stuck living in something less than the constitutional republic our founders designed." (WSJ, June 4, 2026). According to public record, on October 6, 2026, Rush pleaded guilty to wire fraud, admitting to $194 million in losses and confessing to exposing clandestine intelligence source to a foreign official.

The sequence – gag order, arrest of the CIA office who controlled the fabricated classified program, resignation of the DNI who was restoring transparency and the resignations of the Deputy

Director of National Intelligence for Policy and Capabilities and Associate Director for Intelligence and International Affairs at the OMB who did not want to become complicit – occurred within two weeks of the court shutting down Plaintiff's ability to file. The cost-segregation records at issue in this Motion are the only financial documents that will connect the black budget programs to the specific contracts and technology at issue. The intelligence community knows. The question this Motion puts before the Court is whether the records will survive long enough for anyone else to see.

## II. RELIEF REQUESTED

Plaintiff respectfully requests this Court vacate or amend the November 6, 2026 Minute Order to:

1. Strike the "no new circumstances" finding in light of the events enumerated in Section I.A
2. Strike the improper reliance on the pending-appeal Solos v. Meta orders
3. Recognize that Rule 65(a)(1) notice has been satisfied through CADC No. 26-5358 and that Plaintiff is within her time to serve
4. Correct the docket integrity issue regarding ECF No. 22
5. Acknowledge the new circumstances enumerated in Section I.A

Dated: November 9, 2026

Respectfully submitted,

Daitona Carter

Daitona Carter, Movant-Appellant Pro Se
General Delivery, Main Post Office
2 Massachusetts Ave NE
Washington, DC 20002

legal@daitonacarter.com